## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

KARREIM RICHARDSON,

                                        Petitioner,

          v.                                                    9:20-CV-809
                                                                (GLS/ATB)
WILLIAM LEE, Superintendent

                                        Respondent.

KARREIM RICHARDSON, Petitioner pro se
DENNIS A. RAMBAUD, Ass't Attorney General, for Respondent

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

### REPORT-RECOMMENDATION

     This matter has been referred to me for Report and Recommendation by the
Honorable Gary L. Sharpe, Senior United States District Judge, pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y. Local Rule 72.3(c).

     Petitioner challenges a judgment of conviction, rendered after a jury trial in the
Albany County Court from May 9, 2016 to May 12, 2016.  Petitioner was convicted of
five counts of second degree Criminal Possession of a Weapon. (Trial Transcript ("T")[1]
722-25).  On July 1, 2016, petitioner was sentenced to a determinate prison term of 12
years on each count, followed by 5 years of post-release supervision, with all sentences
to run concurrently. (ST 10-11)  The Appellate Division, Third Department affirmed
petitioner's conviction on June 21, 2018, and the New York Court of Appeals denied

---

[1] Respondent has filed the State Court Records in two groups.  One group contains the state
court "record on appeal." (State Court Record ("SR")) (Dkt. No. 11).  Respondent has numbered the
SR at the bottom of the page, and the court will cite to the page numbers accordingly.  The second
group contains the Trial Transcript and Sentencing Transcript ("T" and ""ST") respectively (Dkt. No.
11-1).  When I cite to a specific witness's testimony, I will designate the page of the transcript, together
with the witness's name.

leave to appeal on December 13, 2018. *People v. Richardson*, 162 A.D.3d 1328 (3d Dep't), *lv. to appeal den.*, 33 N.Y.3d 1128 (2018).  Petitioner filed a petition for writ of error coram nobis in the Appellate Division, Third Department which was denied on November 1, 2019. (SR 497).  The New York Court of Appeals denied leave to appeal the Appellate Division's coram nobis decision on April 23, 2020. (SR 506).

In his federal habeas corpus application, petitioner alleges that his trial counsel was ineffective for multiple reasons:

1.    Counsel improperly withdrew petitioner's motion to suppress physical evidence after the close of the suppression hearing.

2.    Counsel failed to renew his request for a *Darden*[2] hearing after the close of the suppression hearing.

3.    Counsel failed to object to the introduction of photographs of text messages between the informant and petitioner.

4.    Counsel failed to object to the prosecutor's inflammatory remarks on summation.

5.    Counsel failed to move to dismiss the indictment on "legal sufficiency" grounds.[3]

Respondent filed an answer to the petition, together with a memorandum of law and the

---

[2] *People v. Darden*, 34 N.Y.2d 177 (1974).  *Darden* provides for a hearing to establish the reliability of an informant where there is insufficient evidence to establish probable cause apart from the testimony of the arresting officer as to communications received from the informer. 34 N.Y.2d at 181.

[3] Petitioner raised this basis for relief in a separate ground.  The court notes that petitioner was represented by a different attorney at the grand jury stage of his criminal action (Robert Knightly, Esq.), and thus, may have separated the grand jury claim from the rest of the ineffective assistance grounds for that reason.  Mr. Knightly represented petitioner until the suppression hearings, at which time, the court noted that new counsel was taking over petitioner's representation. (Pretrial Hearing Transcript ("PH") at 3).

2

pertinent state court records. (Dkt. Nos. 10, 11). Petitioner has filed a traverse. (Dkt. No. 15). For the following reasons, this court agrees with the respondent and will recommend denial of the petition.

## I.    Facts

In July of 2015, a confidential informant ("CI") worked with the Albany Police Department to arrange for the purchase of several firearms from petitioner. The CI told Detective Kevin Meehan ("Meehan") that he could purchase firearms by mail from an individual who the CI knew as "Trey." (Meehan: 440). The CI provided Meehan with Trey's telephone number. Using an online "search engine," Meehan discovered that the telephone number was registered to petitioner in Virginia. (Meehan: 529).

Meehan testified that he asked the CI to place "controlled" telephone calls to petitioner in an attempt to purchase firearms. (Meehan: 442). The telephone calls were monitored and recorded in Meehan's presence. (Meehan: 442-43). Meehan testified that a variety of text messages were also exchanged between petitioner and the CI which were photographed by Meehan. (Meehan: 443). Meehan also received text messages from the petitioner on Meehan's police-issued cell phone, and these messages were also photographed.[4] (Meehan: 447). Copies of all the photographed text messages were admitted as exhibits at trial. (Meehan: 446) (Trial Exhibits 24, 25). Using the text messages, Meehan explained to the jury, how the CI requested firearms from the petitioner, what weapons those were, and how they were to be delivered to

---

[4] Meehan explained that the CI's cellular telephone could not receive photographic messages. Meehan asked the CI to give petitioner Meehan's telephone number so that the CI could send photos of the guns. (Meehan: 452).

Albany. (Meehan: 449-51).

For the first transaction, the CI was directed to wire the money to Virginia so that petitioner could send the guns to Albany by mail. (Meehan: 452). They obtained the petitioner's account information so that the money could be wired to a specific bank account. (Meehan: 454-55).  Money was subsequently wired to petitioner's account through Western Union. (Meehan: 460).  On June 4, 2015, the officers intercepted a package, addressed to the CI at the pre-arranged address.  The package contained a 9-millimeter pistol and 34 rounds of matching ammunition. The return address on the package was in Virginia Beach. (Detective Edward O'Leary: 383-84; Detective Robert Mulligan: 387, 390; Meehan: 489-91).

After the package was intercepted, the officers asked the CI to attempt to purchase additional firearms from petitioner. (Meehan: 461).  More money was wired to the petitioner, but the firearms were not received.[5] (Meehan: 462).  Meehan testified that, after various telephone calls and text, it was agreed that petitioner himself would deliver the two firearms that were already purchased, plus two more firearms to Albany. (Meehan: 462).  One of the recorded telephone calls between the CI and petitioner that was used to plan the purchase was admitted as an exhibit at trial.[6] (Meehan: 462-63). Meehan testified that he listened to both sides of the telephone call. (*Id.*)

On July 19, 2015 there were additional telephone calls made between petitioner

---

[5] On cross-examination, Meehan testified that from telephone calls and text messages, it was determined that petitioner could not purchase the requested firearms in Virginia at that time. (Meehan: 498, 500).

[6] The audiotape of the telephone call was played for the jury. (Meehan: 464).

and the CI in an attempt to arrange for a meeting place and time so that petitioner could deliver the firearms. (Meehan: 464). Ultimately, they decided to meet in a parking lot at 1400 Washington Avenue which is on the State University of New York ("SUNY") Albany campus. (Meehan: 465). Petitioner stated that he was in the large parking lot near a vending machine. (Meehan: 465).

Meehan, the CI, and another detective drove to the designated area. (Meehan: 465-66). When they arrived, Meehan observed a vehicle with its lights on, backed into an area near a vending machine. (Meehan: 466). The parking lot was large, but relatively empty because the students were on break for the summer. Meehan drove by the car in question and noticed that it bore a Virginia registration. (Meehan: 466). Meehan parked in an area close by. (*Id.*) The officers did not attempt to approach the vehicle right away. Meehan testified that two of the occupants of the vehicle got out of the car and made their way to the vending machine, a short walk away. (*Id.*) In addition, the officers had "take down" teams in the area, and wanted to make sure that all the teams were prepared to approach the vehicle at the same time. (Meehan: 466-67). To gain a "tactical advantage," they waited for all four occupants to be back in the car together. (Meehan: 467).

After all four people were back in the car, the "take-down" teams converged and took all of the occupants into custody. (*Id.*) Meehan was not in the initial "take-down" team. He approached the vehicle a few seconds later. (*Id.*) As he approached the vehicle, he saw petitioner being "removed" from the driver's seat, the door of the car was open, and he could see "from some distance," the grip of a handgun, between the

center console and the driver's seat. (Meehan: 468).  Meehan also testified that he later determined the car was registered to the petitioner. (*Id.*)

Albany Police Detective Scott Gavigan, testified that he was a member of the "take-down" team who arrested petitioner and the other individuals in the car. (Gavigan: 269).  Gavigan was also involved in the subsequent search of the petitioner's car. (Gavigan: 270).  Gavigan testified that from petitioner's car, the officers recovered a .45 caliber handgun next to the driver's seat, three semi-automatic weapons (a .45 caliber, a .40 caliber, and a nine millimeter), and a semi-automatic rifle. (Gavigan: 270-71).  At least four of the guns were loaded, and additional ammunition was found in a separate bag. (Gavigan: 294-95) (cross).  The officers confiscated petitioner's cell phone and debit card. (Gavigan: 289) (cross).  The officers arrested all four occupants of the car. (Gavigan: 298) (cross).

Two young women who were arrested in the car along with petitioner and his cousin[7] both testified at trial. (Blissett: 298-338; Jeffrey: 338-53).  Ms. Jessica Blissett testified that she lived in Brooklyn, New York with her mother and went to high school with petitioner.  Petitioner introduced her to Linares. (Blissett: 300-301).  Petitioner called Ms. Blissett on approximately 1:00 a.m. on July 19, 2015 to see if she was doing anything for the weekend. (Blissett: 303).  Ms. Blissett testified that she told petitioner that she had plans to go to the beach, but petitioner was welcome to come along. (Blissett: 303-304).  Petitioner agreed and later arrived at her house in Brooklyn with his cousin Carlos. (Blissett: 304).

---

[7] Petitioner's cousin, Carlos Linares, was the fourth person in the car and was petitioner's co-defendant at trial.

Ms. Blissett testified that Carlos had a gun when he came to the house, and Blissett told Carlos to "get that out of here," so Carlos put the gun in a closet. (Blissett: 304-305). Petitioner subsequently left for a while, but ultimately returned and asked Ms. Blissett if she wanted to accompany petitioner and Carlos to Albany. At that point, Ms. Blissett called her friend Keisha Jeffrey to see if she wanted to go join in the trip to Albany. (Blissett: 305-306). Ms. Jeffrey agreed, and petitioner went to pick her up. (Blissett: 306). Before they left for Albany, Ms. Blissett testified that she noticed a box which contained a handgun. She asked to see the gun, and petitioner let her hold it. When she was finished looking at the gun, petitioner wiped the gun off and put it back in the box. (Blissett: 307-308). Carlos left Ms. Blissett's house with the big gun that he had placed in the closet, and the four individuals left for Albany. (Blissett: 308-309).

Ms. Jeffrey testified that she saw the long gun in the closet when Carlos went to get it and saw him holding it. (Jeffrey: 343). She testified that he put the long gun in the center console of the SUV, but Jeffrey told him that they could not drive with the gun there, so she passed it back, and Carlos put it under the third row of seats. (Jeffrey: 344).

Petitioner called four witnesses for his defense. Arkel McCarter, petitioner's half brother testified that on July 18, 2015, he and petitioner went to the gun range in Virginia Beach. (McCarter: 551). Petitioner had "his rifle" and a "personal gun." (McCarter: 552). They used both of the guns at the range and then went back to McCarter's house where the petitioner told McCarter to take the guns out of the car. (McCarter: 553). Mr. McCarter then stated that he got a telephone call from some

"girls," and he forgot to take the guns out of the car. (McCarter: 554).  Mr. McCarter stated that he spoke with the petitioner the next day, but found out that he had gone to New York City. (McCarter: 554-55).

Michael Lyon, another of petitioner's friends from high school, testified that the petitioner came to New York City on July 19, 2015 and groomed his dog.[8] (Lyon: 561). Jaleesce Brown, petitioner's first cousin testified that she attended SUNY Albany, and that petitioner was coming to Albany to visit her. (Brown: 563-64).  Ms. Brown testified that she told petitioner to meet her in the parking lot on the SUNY Albany campus. (Brown: 567).  However, when she called his cell phone, he did not answer. She went to the parking lot, and saw the police, but did not realize that it was the petitioner who was being arrested. (Brown: 569-70).

## II.  **Generally Applicable Law**

### A.    **Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")**

The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir.

---

[8] Petitioner's occupation was dog groomer.

2008).  This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

"'A principle is clearly established Federal law for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality.'"  *Garlick v. Lee*, No. 20-1796, __ F.3d __, 2021 WL 2385394, at *4 (2d Cir. June 11, 2021) (quoting *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, citation, and alteration omitted)).  A decision is contrary to well-established Supreme Court precedent "'when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Id.* (internal quotation marks omitted). "An unreasonable application of clearly established federal law occurs when 'the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (internal quotation marks, alterations, and citation omitted)).  The issue is not whether the federal habeas court "believes the state court's determination was incorrect," but whether that determination was unreasonable, which is a "substantially higher threshold." *Id*. (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Under the AEDPA, a state court's factual findings are presumed correct, unless

that presumption is rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of

review applies, and both questions of law and mixed questions of law and fact are

reviewed *de novo*.  *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).  Finally, the

Supreme Court has held that circuit and district court decisions do not constitute

"clearly established Federal Law, as determined by the Supreme Court."  *Parker v.

Matthews*, 567 U.S. 37, 132 S. Ct. 2148, 2155 (2012).  Instead, circuit court decisions

may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying

the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

## B.    Exhaustion and Procedural Default

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust

available state remedies, . . . thereby giving the State the opportunity to pass upon and

correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S.

27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation

and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly

present" his claim in each appropriate state court, including the highest court with

powers of discretionary review, thereby alerting that court to the federal nature of the

claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

A federal judge may not issue a writ of habeas corpus if an adequate and

independent state-law ground justifies the prisoner's detention, regardless of the federal

claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  A federal habeas court

generally will not consider a federal issue if the last state court decision to address the

issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

## III.    **Ineffective Assistance of Trial Counsel**

### A.    **Legal Standards**

The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland.* First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment." *Hudson v. New York,* No. 07-CV-1327, 2007 WL 3231970, at *2-3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington,* 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692-93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination

whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

Upon review of an habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

### B.    Analysis

Petitioner raises five grounds for counsel's alleged ineffectiveness. Respondent has addressed each basis separately as well as addressing counsel's performance in general.[9] In his direct appeal, petitioner raised nine grounds for relief. (SR 137-138)

---

[9] In his traverse, petitioner argues that his "appellate" counsel claim is not procedurally defaulted. (Pet.'s Trav. at 1-6) (Dkt. No. 15). The petition does not include an ineffective assistance of appellate counsel claim, nor does respondent argue that such claim should be dismissed based on a procedural default. Respondent argues that one of petitioner's trial counsel claims was not raised on appeal, is unexhausted and is subject to dismissal because there is no venue for him to return to New York State court to exhaust– implying that the claim should be dismissed based on a procedural

(Pet.'s Appellate Brief) (Contents).  Petitioner made several arguments regarding counsel's performance, including his failure to object, and also raised the underlying improper admission of evidence which resulted from the failure to object.[10]

Specifically, petitioner argued that his attorney should have objected to "improper questions" on the People's direct examination; he should have objected to the admission of evidence which was lacking in proper foundation–the text messages and audio recordings; he "inexplicably" consented to waive all suppression issues after the suppression hearing; he did not adequately cross-examine witnesses; he did not object during the prosecutor's improper remarks on summation; he improperly stipulated to the "firearm" element of the offenses; and he did not renew his motion for a *Darden* hearing. (SR 172-73).  Petitioner also argued that his "original counsel"[11] was ineffective because he failed to file a motion to dismiss the indictment when petitioner was not produced to testify before the Grand Jury. (SR 173-74).

The Appellate Division held that the "record as a whole" confirmed that counsel provided meaningful representation by making appropriate pretrial and trial motions,

---

default. (Resp. Mem. at 20) (Dkt.  No. 10-1).  Thus, the court will address only claims raised in the petition–all alleging that his trial counsel was ineffective.

[10] On appeal, petitioner argued that the trial court erroneously admitted evidence of the text messages and audio recordings of conversations between the CI and petitioner without foundation, and because the CI did not testify (including a confrontation argument) (Points I, II, and III); the court improperly admitted evidence of petitioner's prior bad acts (Point IV); the prosecutor's summation improperly shifted the burden of proof, bolstered the credibility of the people's witnesses, and relied on wild speculation (Point V); the police did not have probable cause to arrest petitioner, and any evidence recovered should have been suppressed (Point VI); the petitioner's request for a *Darden* hearing should have been granted (Point VII); petitioner's trial counsel was ineffective (Point VIII); and petitioner's sentence was harsh and excessive (Point IX).

[11] Petitioner obtained a new attorney prior to trial.

14

effectively cross-examining witnesses, and presenting a cogent opening statement and summation. 162 A.D.3d at 1333.  The Appellate Division also found that counsel presented "a plausible" defense, including the testimony of three witnesses, one of whom testified that he left the guns in the car by accident and "all three of whom refuted that the subject telephone number belonged to defendant."[12] *Id.* (citations omitted).

### 1.    Motion to Dismiss Indictment

With respect to petitioner's original attorney, the Appellate Division found that petitioner received notice of the Grand Jury proceeding, and petitioner provided timely notice of his intent to appear, but it was unclear from the existing record "why, or whether, defendant did not testify before the grand jury." 162 A.D.3d at 1332.  The court ultimately held that the issue was more suited to a motion to vacate plaintiff's conviction pursuant to section 440.10 of the New York State Criminal Procedure Law. 162 A.D.3d at 1332 (citing N.Y. Crim. Proc. Law § 440.10).  The court also noted that the failure to file a motion to dismiss the indictment on such grounds "without more" did not constitute ineffective assistance of counsel. *Id.* (citations omitted).

In his habeas corpus application, petitioner has changed his argument.  He argues that counsel was ineffective in failing to move to dismiss the indictment on "legal insufficiency" grounds because there was insufficient evidence before the grand jury that he possessed the firearms "in public" because the SUNY Albany campus is not

---

[12] In addition, although not mentioned by the Appellate Division, petitioner's witnesses also testified that they had never known the petitioner to go by the name "Trey," which was the nickname used by the CI in his dealings with the target of the investigation.

"public." (Pet. at 10-11). Petitioner never raised this basis for review in New York State court, making his claim unexhausted. Petitioner cannot return to New York State court to raise this free-standing claim, and thus, while unexhausted, this ground would also be deemed procedurally defaulted.

In his coram nobis application, petitioner alleged that his appellate counsel was ineffective, in part, because she failed to raise the grand jury/legal insufficiency issue as currently articulated by petitioner in his habeas corpus application. If petitioner could succeed in showing that his appellate counsel was ineffective in failing to raise the specific grand jury issue on petitioner's direct appeal, he would be able to show "cause" for the procedural default. *Eleby v. Coveny*, No. 18 Civ. 2694 (KPF), 2019 WL 5205384, at *8 (S.D.N.Y. Oct. 16, 2019) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).

There are multiple reasons that petitioner cannot succeed in making the required showing. First, appellate counsel is not ineffective if she fails to raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983). An appellate attorney may focus on the defendant's stronger arguments while winnowing out the weaker arguments in the presentation of an appeal. *Id.* Second a review of the petitioner's newly articulated basis for reversal shows that there was no chance that such an argument would have succeeded.

As stated by respondent, petitioner's counsel did move to dismiss the indictment based on "legal insufficiency," if not specifically for the reason now articulated by

petitioner. (SR 91, 93-94).  The trial judge denied the motion in a written decision.[13]

(SR 84-86).  Petitioner now claims that the court lacked jurisdiction because there was

insufficient evidence to show that he possessed the guns "in public," and thus, does not

establish the elements of the offense charged.  Petitioner argues that the SUNY Albany

parking lot was "private," and therefore, he could not be charged with possession of the

guns under N.Y. Penal Law § 265.03(3).

 Petitioner has quoted the wording of the indictment in an effort to make this

showing.  The indictment reads in part:[14]

> Criminal Possession of a Weapon in the Second Degree, in
> violation of section 265.03[3] of the Penal Law of the State of
> New York, a Class C Violent Felony, in that the defendant, on
> or about July 19, 2015, at approximately 10:02 PM, while in
> the area of 1400 Washington Avenue (University at
> Albany-SUNY), in the City of Albany, County of Albany,
> State of New York, did possess a loaded firearm and said
> possession was not in the defendant's home or place of
> business, to wit: at the aforesaid date, time and place,
> defendant, **_while out in public_**, possessed a loaded firearm,
> specifically a Ruger Model P90 .45 caliber pistol.

(SR 121) (emphasis added).  Aside from the meritless claim that he was not "in public"

when he was in the SUNY Albany parking lot, the main problem with petitioner's

argument is that the elements of section 265.03(3) do not specify that the petitioner be

"out in public."  The elements of N.Y. Penal Law section 265.03(3) read as follows:

---

[13] The judge stated that "[t]he Court has inspected the Grand Jury minutes and finds the
evidence before the Grand Jury legally sufficient to establish the offense charged or lesser included
offenses." (SR 85).

[14] There are five separate counts of the indictment, each describing a different firearm, but the
relevant wording is the same in each count. (SR 121-25).  Thus, the court will only quote one of the
five counts.

> A person is guilty of criminal possession of a weapon in the
> second degree when: . . .
> (3) such person possesses any loaded firearm. Such
> possession shall not, except as provided in subdivision one or
> seven of section 265.02 of this article, constitute a violation of
> this subdivision if such possession takes place in such
> person's home or place of business.

The only reason that the indictment included the words "in public" was to indicate that the petitioner was not "in his home or place of business" as required by the statute. The prosecution was not required to show that the petitioner's location was on "public," rather than "private" property, even assuming that the SUNY Albany parking lot was "private" property. The elements of section 265.03(3) require only that the individual possess "any loaded firearm" and that such possession is not in the person's home or place of business. The SUNY Albany parking lot was neither petitioner's home, nor his place of business, and therefore, the indictment was not defective, and counsel would have had no reason to raise such a frivolous argument in his motion to dismiss the indictment, or on appeal of petitioner's ultimate conviction.

Petitioner has failed to show either that his original trial counsel or his appellate counsel were ineffective in failing to make this argument at any time. Thus, petitioner has failed to show cause for his procedural default.[15] Petitioner has also failed to show prejudice or that he is "actually innocent," and his claim that his first attorney was

---

[15] Although the court need not specifically consider prejudice since there is no cause for the default, clearly based on the discussion herein, any attempt to raise such a meritless issue would not have succeeded, and would not have changed the result in petitioner's case. Therefore, petitioner has not shown prejudice based on counsel's failure to raise his grand jury argument as he has articulated it herein.

ineffective must be dismissed.[16]

### 2.    Alleged Trial Deficiencies

On appeal, petitioner challenged the result of the suppression motion, the failure of the court to hold a *Darden* hearing to evaluate the reliability of the CI, the admission of the photographs of the petitioner's text messages to the CI,[17] and the inflammatory nature of the prosecutor's summation.  With respect to these underlying claims, the Appellate Division held that petitioner withdrew his suppression motion after the hearing, rendering his claim "unpreserved."[18] 162 A.D.3d at 1329.  The Appellate Division also found that petitioner's counsel never renewed his request for a *Darden* hearing. *Id.*

The Appellate Division held that petitioner's claims challenging the admission of the text messages and audio recordings of the CI were unpreserved due to counsel's failure to object. *Id.* at 1329-30.  The Appellate Division also held, however, that if the grounds had been preserved, petitioner's claims would have failed on the merits because they were admitted with proper foundation. *Id.*  The court also found that petitioner's challenges to the prosecutor's summation were similarly unpreserved, but

---

[16] The court has considered this claim in conjunction with petitioner's claim of ineffective assistance of counsel.  Any separate claim that the grand jury proceeding were defective does not rise to the level of a constitutional claim, is not cognizable on habeas corpus review and would have been dismissed as such. *See Allen v. Capra*, No. 20-CV-4600, 2021 WL 2206466, at *5 (S.D.N.Y. June 1, 2021) (citations omitted) (claims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court).

[17] This claim was related to petitioner's confrontation clause argument because the prosecution did not call the CI to testify, and petitioner was unable to cross-examine him.

[18] The Appellate Division referred to the "*Mapp/Dunaway/Huntley* hearing. 162 A.D.3d at 1329.

that "in any event, our review of the record reveals that each of the challenged statements was fair comment on the evidence and made in direct response to defense counsel's summation."[19] 162 A.D.2d at 1331.

Finally, the Appellate Division denied petitioner's claim that his attorney was ineffective, in general, and in failing to preserve the above claims, on the merits. 162 A.D.3d at 1331-32. The court found that counsel is not ineffective when he fails to make an argument or motion that he knows has little chance of success. *Id.* at 1332. In addition, the court held that petitioner failed to refute the possibility that counsel's failure to object may have been a "purposeful choice" in an effort to avoid bringing attention to "certain undesirable testimony." *Id.* Finally, the court found that "a review of the record as a whole," confirmed that counsel provided meaningful representation by, "among other things, making appropriate pretrial and trial motions, effectively cross-examining the People's witnesses and presenting a cogent opening statement and summation." *Id.* Counsel also presented a "plausible defense." *Id.*

The Appellate Division did not act contrary to *Strickland* in making its determination on the merits of petitioner's claim that his counsel's failure to object rose to the level of ineffective counsel. With respect to the suppression motion, the trial court found that, even if petitioner had not withdrawn the motion, the court would have

---

[19] The court also held that petitioner's confrontation clause claim, challenging the admission of the police officers' testimony of the petitioner's identification by the CI without putting the CI on the stand was unpreserved. 162 A.D.3d at 1330. Petitioner did not raise this issue as part of his ineffective assistance of counsel claim.

denied the motion to suppress.[20] (Hearing Transcript ("HT") of April 29, 2016 at 9-10)
(Dkt. No. 11-1 at CM/ECF pp.78-79).  Thus, petitioner cannot establish prejudice even
if counsel acted unreasonably in agreeing to withdraw the suppression motion.[21]

The Appellate Division made the same ruling with respect to the admission of the
CI's text messages and audio recordings.  Notwithstanding the failure of trial counsel to
preserve the issue, the Appellate Division found that the evidence was admitted with
the proper foundation. 162 A.D.3d at 1330 (citing inter alia *People v. Green*, 107
A.D.3d 915, 916-17 (2d Dep't 2013), *lv. to appeal denied*, 22 N.Y.3d 1088 (2014);
*People v. Price*, 29 N.Y.3d 472, 477 (2017)); *People v Starr*, 114 A.D.3d 813, 814 (2d
Dep't), *lv denied*, 23 N.Y.3d 1068 (2014) (officer listened to the recording at the time it
was made and testified to its accuracy)).  Under New York law, since "'the ultimate
object of the authentication requirement is to insure the accuracy of the photograph
sought to be admitted into evidence, any person having the requisite knowledge of the
facts may verify . . . .'" *People v. Price*, 29 N.Y.3d at 477 (quoting *People v. Byrnes*, 33
N.Y.2d 343, 347 (1974)).  In petitioner's case, although the CI did not take the stand,
detective Meehan testified that he was present for most of the texts and audio

---

[20] The officers had sufficient probable cause based upon the evidence from the CI to stop and
arrest petitioner when he and the other occupants of the car arrived at the prescribed meeting place.  In
addition, the court found that petitioner consented to speak to the officers after being informed of his
right to remain silent, and the questioning stopped when petitioner asked for counsel. (HT at 9).

[21] The court notes that after questioning counsel, the court determined that there were no
*Huntley* or *Mapp* issues and stated that "I will take as withdrawn or deny any application to suppress
evidence or statements made against the defendants made by the defendants or evidence-used against
the defendants on the People's direct case." (HT of April 29, 2016 at 9-10).  The court then stated that
"I think even if there had not been such stipulation by defense counsel that testimony at the hearing was
clear, and certainly satisfied the evidentiary thresholds in regards to both the statement and the
evidence seized." (*Id.*)

recordings, and he took photographs of the texts and recorded the conversations himself, thus, negating the necessity for the CI to testify as to foundation.[22]

Counsel's failure to renew the request for a *Darden* hearing after the suppression hearing was over is also not unreasonable. As stated above, *Darden* provides for a hearing to establish the reliability of an informant where there is insufficient evidence to establish probable cause, apart from the testimony of the arresting officer as to communications received from the informer. 34 N.Y.2d at 181. While it is true that the CI did not testify, and the officers were acting on information obtained from a CI, Detective Meehan was privy to most of the texts and conversations. *See People v. Crooks*, 27 N.Y.3d 609, 614 (2016) (*Darden* hearing not required where the police made personal observations of petitioner's drug sales to a CI and "engaged in live audio monitoring and recording of" the transactions). In addition, the CI assisted the officers in completing a gun purchase from petitioner through the mail by wiring money to him in Virginia and intercepting the gun that arrived as a result of that purchase.[23] The

---

[22] This also negates the possibility of a confrontation clause issue, which petitioner does not raise in this habeas application even though he raised the issue on appeal in the context of the CI's identification of the petitioner, not in the context of the text messages or audio recordings. 162 A.D.3d at 1330. The Appellate Division considered the merits of one of the confrontation issues related to testimony of the identification of petitioner by the CI after a photo array, but held that petitioner failed to preserve the rest of the identification issues. *Id.* It is unclear why the CI did not testify. There was a discussion during pretrial proceeding about the CI, whether he was going to be called by the prosecution, and the effect of a failure to call him as a witness. (HT of April 29, 2016 at 15-18).

[23] With respect to counsel's representation of the petitioner, the court notes that counsel argued strenuously, albeit unsuccessfully, in opposition to the People's *Molineux* application that evidence of the prior sale should not be admitted because it involved a sale, where the case going to trial involved only possession, and evidence of a prior "sale" would be more prejudicial than probative. (HT of April 29, 2016 at 11-15). *See People v. Molineux*, 168 N.Y. 264, 293 (1901) (Under New York State law, evidence of prior bad acts by a criminal defendant is admissible "to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan . . . ; (5) the identity of the person charged with the commission of the crime on trial.)

reliability of the CI did not need to be tested in a hearing, and counsel did not act unreasonably in failing to renew his motion for such hearing after the trial court left open the possibility of such a motion.

Finally, with respect to counsel's failure to object to the prosecutor's "inflammatory" summation, the Appellate Division stated that petitioner had failed to refute the possibility that counsel's failure to object was a "purposeful choice" in order to prevent highlighting the objectionable testimony or statements. 162 A.D.3d at 1332. Petitioner claims that the prosecutor made "several disparaging comments" about petitioner's counsel, including that counsel was "mistaken;" that he did not understand petitioner's defense about "taking the risk" of selling firearms; and disparaged petitioner's co-defendant's attorney by calling him "clever." (Pet. at 8).

Petitioner also claims that the prosecutor made reference to a "stolen" gun that should not have been admitted into evidence; vouched for the credibility of his witnesses; and engaged in wild speculation about the female DNA that was found on one of the guns and stated that the women were brought along to "camouflage" the petitioner's actions. (Pet. at 9).

A review of the summations of both petitioner and the prosecutor shows that the Appellate Division did not act contrary to *Strickland* when determining that counsel's failure to object to the prosecutor's summation did not amount to ineffective assistance either because the statements were not objectionable, or the failure to object was by purposeful choice, to avoid bringing more attention to unfavorable statements.

Petitioner complains that the prosecutor "disparaged" his attorney by saying that

23

he was "mistaken." During petitioner's counsel's summation, he "asked" the jurors to consider whether petitioner "knowingly" possessed the guns when "he took the risk to drive the guns from Virginia to New York to sell the guns with whatever mark up margin there is to somebody up in Albany." (TT 622-23). When the prosecutor began his summation, he was discussing the elements of the crime which he had to prove beyond a reasonable doubt. (TT 625-26). The prosecutor emphasized that the issue was only knowing possession. He did have to show that petitioner had "intent to drive up here with guns, like Mr. Nestler mistakenly said during his summation." (TT 626). The prosecutor was not disparaging counsel, he was merely correcting a possible misstatement of the elements of the crime, which was fair commentary on defense counsel's statement, which could have been misunderstood by the jury. There was no reason for petitioner's counsel to object to the statement.

It is unclear why the petitioner believes that the prosecutor's statement that Mr. Linares's attorney was "clever" somehow prejudiced petitioner or his attorney. The prosecutor was commenting on Carlos Linares's defense that he did not know anything about the guns and was just like the "girls" in the car. (TT 644). Petitioner also claims that the prosecutor disparaged counsel when he stated that he did not understand his defense. The prosecutor stated that he did not understand the petitioner's "defense" that it did not make sense for petitioner to take the risk of transporting these weapons for what was likely a small profit.[24] The prosecutor was commenting on a statement

---

[24] This court must again note that the issue in petitioner's case was not "sale" of guns, but possession of guns. Thus, discussion of the potential "profit" from the sale of guns was not relevant to the elements of the crime.

made by defense counsel during summation.

Petitioner also complains that the prosecutor improperly mentioned that one of the guns that petitioner possessed was "stolen." However, petitioner has taken the prosecutor's statement out of context. The prosecutor was emphasizing that petitioner did not have to "own" the guns in order to be guilty of possessing the guns, and that guns could come from anywhere or "belong" to anyone. (TT 628-29). They could even be "stolen" as was one of the guns herein. (TT 628-29). The prosecutor was attempting to explain his burden of proof as to the specific elements of the crime. There was no implication that petitioner had stolen the gun, and an objection at that point would simply have highlighted a fact that was not what the prosecutor was trying to say and a fact that may have been viewed as damaging to the petitioner. The prosecutor then discussed constructive possession. (TT 629-31).

Petitioner claims that the prosecutor speculated "wildly" about the female DNA that was found on one of the guns. This issue arose during the prosecutor's discussion of petitioner's co-defendant. (TT 646-47). The prosecutor was responding to Mr. Linares's counsel, who stated that the girls did not see the guns. However, Ms. Jeffrey testified that she passed one of the guns to the back of the car. (TT 646). The prosecutor then referred to the DNA evidence showing a "Jane Doe" DNA on the large gun. (*Id.*) Mr. Linares's counsel did object, and the judge reminded the jury that it was up to them to make such an inference. (TT 646-47). The prosecutor was making fair comment on the evidence in response to a statement by the co-defendant's counsel that the girls never saw the guns to be consistent with Mr. Linares's claim that he did not

know the guns were in the car.

Finally, petitioner complains that his attorney should have objected when the prosecutor stated that petitioner brought the girls with him to "camouflage" his real purpose in coming to Albany.  On the defense summation, counsel discussed bringing the girls to Albany. (TT 613-14).  In an attempt to show that the trip to Albany was "innocent," defense counsel "asked" the jury to considered why the petitioner would take an additional risk and involve more people. (TT 614).  The prosecutor responded to this argument by stating that such conduct could have been an attempt to camouflage the real purpose of the trip. (TT. 648).

The prosecutor may rebut arguments that defense counsel raises on summation, "'even to the extent of permitting the prosecutor to inject his view of the facts to counter the defense counsel's view of the facts.'" *Ayala v. Walsh*, No. 05-CV-1497, 2009 WL 4282034, at *6 (E.D.N.Y. Nov. 23, 2009) (quoting *Readdon v. Senkowski*, No. 96-CV-4722, 1998 WL 720682, at *13 (S.D.N.Y. Oct. 13, 1998)). "Where a prosecutor's statement is responsive to comments made by defense counsel, the prejudicial effect of such objectionable statements is diminished." *Pilgrim v. Keane*, No. 97-CV-2148, 2000 WL 1772653 at *3 (E.D.N.Y. Nov. 15, 2000).  In this case, given the statements made by defense counsel on summation, the Appellate Division did not act contrary to *Strickland* in finding that counsel's failure to object to the allegedly objectionable statements by the prosecutor did not rise to the level of ineffective assistance of counsel.

The Appellate Division also considered counsel's performance in general,

finding that the petitioner received effective assistance.  162 A.D.3d 1333.  As stated by

the Appellate Division, petitioner's counsel made proper motions, both before and

during trial, effectively cross-examined the prosecution's witnesses, made a cogent

opening statement and summation, and presented a "plausible defense." *Id.*  The

defense included three witnesses, one of whom testified that he left the guns in the car,

and all three who testified that the telephone number used to arrange the transportation

of the guns did not belong to petitioner.  Counsel also elicited testimony that petitioner

was not known to his friends as "Trey," the individual known to the CI as responsible

for the transportation of the firearms, and that petitioner had a legitimate reason for

coming to Albany to visit his cousin.  At sentencing, counsel argued for leniency based

on petitioner's lack of a criminal record, his work history, and the fact that he was

licensed to carry weapons in Virginia. (Sentencing Transcript: "ST" 4-7).  The

Appellate Division found that counsel provided meaningful representation.  Petitioner

has not shown that counsel's performance was unreasonable, nor that the state court's

decision to the contrary was unreasonable.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have

fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT</u>**

**<u>TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE</u>**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72.

Dated: July 1, 2021

Hon. Andrew T. Baxter
U.S. Magistrate Judge